**VIRGINIA:**

**IN THE CIRCUIT COURT OF PAGE COUNTY**

| | |
|---|---|
| **HOWAN PROPERTIES, LC,** | )<br>) |
| *Plaintiff,* | )<br>) |
| v. | ) Case No. _____<br>) |
| **THE WOODWORKERS SHOPPE, INC.,** | )<br>) |
| Serve: R/A Daryn Bernard<br>395 South Washington<br>Whittemore, Michigan 48770 | )<br>)<br>)<br>) |
| *Defendant.* | )<br>) |

## COMPLAINT

Plaintiff, Howan Properties, LC, for its Complaint against Defendant, The Woodworkers Shoppe, Inc., alleges the following:

### Introduction

1. For 14 years, Randall Howan and his wife, Misty Howan, devoted their time and money toward building a rental property company, Howan Properties, LC, doing business as Absolutely Perfect Escape ("Plaintiff"). Over those 14 years, the Howans put all their resources towards their business while they lived in a garage. In 2014, after building and renovating 12 other rental properties, Mr. and Mrs. Howan finally made plans to build a home for themselves on a scenic and tranquil property in Stanley, Virginia. This property, located at 346 Hawksbill Park Road, Stanley, Virginia, would serve as the main offices for their business as well as their dream home and residence.

2. Desiring the look of a log cabin home, Mr. Howan placed an order for log siding and other log home products from Defendant, The Woodworkers Shoppe, Inc. Mr. Howan ordered log siding from Defendant after reviewing their promotional materials which provided

1

several descriptions and affirmations regarding quality and customer satisfaction. Among other affirmations, Defendant provided that their wood will "meet the highest standards for beauty, dryness and consistency."

3. Installation of exterior log siding was completed in June, 2015. Beginning after installation and through the filing of this Complaint, excessive resin, or pitch, has been exuding from the exterior log siding. The sticky resin drips down the exterior walls of the building, pools on window sills and deck flooring, and is extremely difficult to clean. This resin exudation is substantial and has steadily grown more noticeable. The excessive resin compromises the aesthetic of the building and requires exorbitant cost to repair and maintain. The excessive resin exudation is suggestive of a defect and that the product delivered to Plaintiff does not conform to the affirmations and descriptions made in the promotional materials or even industry standards.

4. Plaintiff notified Defendant of the defects, particularly the concerns regarding the excessive resin, and Defendant has refused to offer any remedy or cure. Defendant's failure to remedy the defect is a breach of warranty, both express and implied. Plaintiff is seeking damages as a result of Defendant's breach of warranty.

### Parties

5. Plaintiff is a limited liability company with its principal office located at 346 Hawksbill Park Road, Stanley, Virginia.

6. Randall Howan and Misty Howan are the members of Howan Properties, LC.

7. Defendant is a log siding and paneling distributor that offers a variety of log home products.

8. Defendant is incorporated in Michigan with offices in Comins, Michigan.

## Jurisdiction and Venue

9. Pursuant to Va. Code § 8.01-328.1(A)(1), jurisdiction is proper in Virginia because Defendant transacted business in the Commonwealth, particularly by accepting payment for goods that were delivered to Plaintiff in Page County, Virginia.

10. Pursuant to Va. Code § 8.01-328.1(A)(2), jurisdiction is proper in Virginia because Defendant contracted to supply things in the Commonwealth, particularly by completing delivery of goods to Plaintiff in Page County, Virginia.

11. Pursuant to Va. Code § 8.01-328.1(A)(5), jurisdiction is proper in Virginia because Defendant caused injury to the Plaintiff by breach of warranty in the sale of goods when it would be reasonably expected that Plaintiff would use the goods in Page County, Virginia, and Defendant regularly engages in conduct, particularly by its internet presence, to derive revenue from Virginia.

12. Pursuant to 15 U.S.C. § 2310(D)(1)(a), jurisdiction is proper in Virginia to resolve Plaintiff's Magnuson-Moss Warranty Act claim.

13. Pursuant to Va. Code § 8.01-262(4), venue is proper in Page County because a part of the cause of action arose in Page County, including the delivery of goods and the discovery of the breach of warranty.

## Statement of Facts

14. Plaintiff, Howan Properties, LC, owns the real property located at 346 Hawksbill Park Road, Stanley, Virginia (the "Property").

15. The Property serves as the principal office address of Plaintiff as well as the primary residence of its members, Randall and Misty Howan.

16. Desiring the look of a log cabin home, Plaintiff placed a verbal order (the "Order") for log siding and other log home products from Defendant during the Summer of 2014.

17. When placing the Order, Mr. Howan specifically requested White Pine as the source for the log siding. Mr. Howan was familiar with White Pine from Plaintiff's other log style rental homes. Defendant offered Red Pine, and asserted that the only difference between Red and White Pine was a difference in color and Red Pine's higher volume of knots in the wood.

18. None of Plaintiff's rental homes exhibited noticeable problems with resin exudation despite being sided with pine and located on adjacent and nearby lots, subjecting the exteriors to similar weather conditions.

19. Plaintiff decided to purchase Defendant's log siding products after reviewing their promotional materials. These promotional materials provided several descriptions and affirmations regarding the quality of the log home products that he would receive.

20. A pamphlet provided by Defendant provided the following affirmations regarding Defendant's log home products:

    (a) "Installation quick, easy and efficient for the professional or the do-it-yourselfer;"

    (b) "only premium lumber;"

    (c) use of "computer precise kiln drying"

    (d) that "craftsmen carefully inspect each piece of wood;" and

    (e) will "meet the highest standards for beauty, dryness and consistency."

A copy of the pamphlet is attached and incorporated herein as **Exhibit A**.

21. A sample kit provided included various pieces of siding and an informational letter from The Woodworkers Shoppe. The letter provided the following affirmations regarding Defendant's log home products:

> (a) "These products are designed to offer the look of a full log home without the costs, hassles, and maintenance of a full log home;"
>
> (b) "Only the best quality pine and cedar are used;" and
>
> (c) "It is our goal to offer a high quality wood product at a fair price and to make sure the every customer is a satisfied customer."

A copy of the informational letter is attached and incorporated herein as **Exhibit B**.

22. Additional promotional materials provided images of homes purporting to use Defendant's log home products with no visible resin exudation.

23. Plaintiff relied on the above affirmations made by Defendant when deciding what log siding to purchase.

24. Specifically, Plaintiff was looking for a log home product that was easy to install and easy to maintain, but had the aesthetic quality of a premium lumber product.

25. On or around December 23, 2014, the Order was delivered to the Property. An Invoice itemizing the delivered goods is attached and incorporated herein as **Exhibit C**.

26. Mr. Howan inspected the log home products from Defendant upon delivery, and on the surface, the goods appeared satisfactory.

27. The exterior log siding was installed in a workmanlike manner by a licensed contractor.

28. Installation was complete on or around June, 2015.

29. By July, 2015, Mr. Howan began noticing resin exuding from the knots of the exterior log siding.

30. At first, while unsightly, the resin exudation was mild and easier to ignore. Over the course of nearly three years, the knots continued to exude resin and now can be noticed on the North, South, East, and West facing walls of the building from a distance. Photographs of the resin exudation are attached and incorporated herein as **Exhibit D**.

31. A large percentage of the hundreds of knots in the log siding of the Property are dripping with resin.

32. The resin is plainly visible from distances of 50 - 75 feet away.

33. Portions of the exterior protected from direct exposure to sun and rain still exude resin.

34. While some resin exudation occurs in spots reachable by the average homeowner, many knots exuding resin cannot be reached without great difficulty and risk and would require professional assistance.

35. The resin exudation is pervasive, plainly visible to the naked eye, and ruins the aesthetic quality of the Property.

36. Resin has dripped onto window sills, gutter drains, deck flooring, and rails.

37. As a result of the excessive resin, Plaintiff's property falls well short of the highest standards for beauty as promised by Defendant.

38. The presence of excessive resin or pitch indicates that the lumber used to make the siding was improperly dried at too low of a temperature.

39. The USDA Forest Service Wood Handbook provides the following:

Pitch is a solution of natural rosins and turpentine in species such as spruce, pine, and fir. It remains in the lumber from these species. The ease with which it exudes to the surface of lumber depends in the amount of turpentine in which the pitch is dissolved and the temperature (that is, the more turpentine, the more fluid the pitch; the higher the temperature, the more fluid the pitch). Pitch exudation can occur in isolated spits or in large pockets or seams. When pitch bleed occurs, high

6

temperature is the cause. If the temperature at the surface of the wood increases, usually from being exposed to direct sunlight, the pitch oozes to the surface.

****

The only way to prevent pitch bleed is to remove the turpentine from the wood during lumber processing. Depending on the species, specific kiln schedules can be used to drive off most of the turpentine, thus "fixing" or "setting," the pitch (making it less fluid).... The difficulty occurs with appearance grades of lumber, such as for siding and trim. Kiln schedules for setting pitch involve higher temperature and last longer than normal drying schedules.

40. The excessive resin coming from the knots of the log siding installed on the Property is caused by improper lumber drying at too low of a temperature.

41. The cost of removing the resin is significant due to the large surface area of the exterior of the Property and the large number of knots exuding pitch.

42. Removing the excessive pitch would require high pressure removal to strip the log siding, staining, borate treatment, and caulking.

43. Additionally, due to shrinkage and other results of inconsistent drying, caulking will be required to remedy gaps in the exterior siding.

44. Such treatment would not prevent the log siding from dripping further, and resin exudation will be a recurring problem of the Property.

45. On or around December 11, 2017, Plaintiff issued notice of the defects and concerns regarding the log home products delivered in December, 2014.

46. Defendant refused to offer any remedy for the identified defects, stating that Plaintiff's claims of warranties were "completely without merit" and that Defendant was not responsible for the maintenance of the products sold to Plaintiff.

47. Defendant also claimed in response to the December 11, 2017 notice that a disclaimer about the problems with pitch (or resin) can be found on Defendant's website.

Plaintiff was instructed to go to the website in the promotional materials received "for more information."

48. Defendant's website provides that "most customers will not experience noticeable pitch with our wood siding products. However, if bleeding does occur, it is easily removed "by using a scraper or buffing brush or applying denatured alcohol or acetone."

49. The level of resin exuding from the Property is not easily removed and requires more substantial remedies than simple application of a scraper or chemicals.

### **Count I - Breach of Express Warranty (Va. Code § 8.2-313)**

50. Plaintiff incorporates Paragraphs 1 - 49 as if restated herein.

51. Through its promotional materials, Defendant made a promise or guarantee that its log home products were of a certain quality or character.

52. Defendant expressly stated in writing that they select "only premium lumber."

53. Defendant expressly stated in writing that they use "computer precise kiln drying."

54. Defendant expressly stated in writing that their wood meets "the highest standards for beauty, dryness and consistency."

55. Defendant expressly stated in writing that their "products are designed to offer the look of a full log home without the costs, hassles, and maintenance of a full log home."

56. Defendant expressly stated in writing that they "only use the best quality pine."

57. Plaintiff relied on the above written affirmations when purchasing Defendant's product such that the affirmations were a basis for the bargain.

58. Defendant did not qualify any of the above affirmations as statements of opinion.

59. Defendant had superior knowledge of the log home products sold.

8

60. The log home products delivered on December 23, 2014 did not conform to the above description and affirmations provided by Defendant.

61. Plaintiff did not receive premium timber or the best quality pine.

62. Plaintiff did not receive a log home product that met the highest standards of beauty, dryness and consistency

63. Plaintiff did not receive a product that was properly kiln dried. The log home products Plaintiff received were dried at too low of a temperature.

64. Defendant breached the express warranties made to Plaintiff.

65. As a direct and proximate result of Defendant's breach, the log siding installed on the Property exudes excessive resin which ruins the aesthetic quality of the Property.

66. On or around December 11, 2017, Plaintiff notified Defendant of their breach regarding the log home products delivered in December, 2014.

67. Defendant failed to offer any remedy when notified of Plaintiff's concerns.

68. As a direct and proximate result of Defendant's breach and failure to remedy, Plaintiff has incurred and will continue to incur damages.

69. Repairing the excessive resin exudation will require multiple treatments costing greater than $418,500.

70. Plaintiff has also incurred damages because the value of the property has diminished as a result of Defendant's breach.

### Count II - Breach of Implied Warranty (Va. Code § 8.2-314)

71. Plaintiff incorporates Paragraphs 1 - 70 as if restated herein.

72. Defendant delivered to Plaintiff log home products that would not pass without objection in the trade.

73. Defendant delivered to Plaintiff log home products that were not fit for their ordinary use of exterior siding.

74. The log home products were dried at too low of a temperature.

75. Defendant breached the implied warranty of merchantability.

76. As a direct and proximate result of Defendant's breach, the log siding installed on the Property exudes excessive resin which ruins the aesthetic quality of the Property.

77. As a direct and proximate result of Defendant's breach, the log siding installed has shrunk creating noticeable gaps in the exterior siding.

78. As a direct and proximate result of Defendant's breach, Plaintiff has incurred and will continue to incur damages.

79. Repairing the excessive resin exudation will require multiple treatments costing greater than $418,500.

80. Plaintiff has also incurred damages because the value of the property has diminished as a result of Defendant's breach.

### Count III - Magnuson-Moss Warranty Act (15 U.S.C. § 2301, *et seq.*)

81. Plaintiff incorporates Paragraphs 1 - 80 as if restated herein.

82. Defendant is a "supplier" pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4).

83. The log home products provided by Defendant is a "consumer product" pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1), because the log home products were personal property distributed in commerce and normally used for household purposes, including property intended to be attached or installed to real property.

10

84.  Plaintiff is a consumer pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3) because Plaintiff was a buyer of a consumer product.

85.  Defendant breached both its written and implied warranties, as detailed above.

86.  As a direct and proximate result of Defendant's breach, the log siding installed on the Property exudes excessive resin which ruins the aesthetic quality of the Property.

87.  As a direct and proximate result of Defendant's breach, the log siding installed has shrunk creating noticeable gaps in the exterior siding.

88.  As a direct and proximate result of Defendant's breach, Plaintiff has incurred and will continue to incur damages.

89.  Addressing the excessive resin exudation will require multiple treatments costing greater than $418,500.

90.  Plaintiff has also incurred damages because the value of the property has diminished as a result of Defendant's breach.

WHEREFORE, Plaintiff requests that this Court enter Judgment in its favor and against the Defendant in the amount of $418,500.00 in compensatory damages, with pre-judgment and post-judgment interest thereon, plus its costs and expenses, including reasonable attorney's fees, in bringing this action pursuant to 15 U.S.C. § 2310(d)(2), and such further relief this Court deems proper.

Pursuant to Virginia Supreme Court Rule 3:21, Plaintiff hereby demands a trial by jury.

Dated: May 21, 2018

Respectfully submitted,

                HOWAN PROPERTIES, LC
                By Counsel

_/s/ M. Sharp_
KEVIN M. ROSE (VSB No. 35930)
MICHAEL W. SHARP (VSB No. 89556)
T. JOEL FRANCIS (VSB No. 92234)
BotkinRose PLC
3190 Peoples Drive
Harrisonburg, VA 22801
(540) 437-0019 (telephone)
(540) 437-0022 (fax)
krose@botkinrose.com
msharp@botkinrose.com
jfrancis@botkinrose.com
*Counsel for Plaintiff*



FILED
MAY 25 2018
JMC 8:32am
Page Co. Circuit Court